UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

KIM A. DOYLE,  )
    *Plaintiff*,  )
  )
  *vs*.  )   1:07-cv-01658-JMS-TAB
  )
ADMIN A STAR FEDERAL,  )
    *Defendant*.  )
  )

### **ORDER**

In this employment-law action, the Defendant has filed a motion for summary judgment, which the Court will now address. [Dkt. 66.] Although the Complaint names "Admin A Star Federal" as the Defendant, the Defendant and the pro se Plaintiff, Kim A. Doyle, both call it National Government Services, Inc. ("NGS"). The Court will do so too.

A motion for summary judgment asks the Court to find that no trial is needed because no dispute exists about any legally important fact. *See* Fed. R. Civ. Pro. 56(c). Although the parties may sincerely disagree about what happened, the Court can only consider a party's version of the facts if the party can offer legally admissible evidence to support it. *See id.* Also, even if admissible evidence shows that Ms. Doyle disputes some facts, a trial still may not be needed. Under the law, Ms. Doyle must be able to prove certain facts to win at trial. In responding to the summary judgment motion, Ms. Doyle must show that she has admissible evidence about her version of those important facts that she could offer at trial if one were held. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Trials are only needed to resolve disputes about legally important facts. So if Ms. Doyle can't or doesn't provide admissible evidence different than NGS about the legally important facts, the Court must grant NGS' motion and issue judgment in its favor now.

# I.
## THE PARTIES' EVIDENCE

**A. NGS' Evidence**

Ms. Doyle worked for NGS from 2005 until February 2007, as a claims processor (called a "DM" clerk). [Dkt. 68-3 at 26; dkt. 68-4 at ¶20.] In November 2006, Ms. Doyle's manager at the time verbally warned her about "disruptive, disrespectful, and unprofessional behavior," and gave her six weeks to increase her work output. [Dkt. 68-1 at 9 *to* 11.] In December 2006, her new manager, named Scott Medawar, again warned Ms. Doyle about her behavior and work output. [Dkt. 68-1 at 3 ¶9, 21.]

In February 2007, an employee sent Mr. Medawar an email. That email told Mr. Medawar that Ms. Doyle

> was very upset. She was holding a copy of a email that she had received, I don't know who it was from, it was one of the Managers, she was very loud and upset, she said: If they don't leave me alone, I have a pair of scissors in my purse…said she didn't care who heard her either….

[Dkt. 68-1 at 28.]

NGS investigated the complaint. Two other employees agreed that Ms. Doyle had said that she had scissors in her purse and had better be left alone. [*See* dkt. 68-4 at 5 ¶¶ 14-15.]

When Mr. Medawar (and an employee from human resources) met with Ms. Doyle, she said that she hadn't been referring to anyone at work. Instead, she told them that she had said: "if [her daughter] came around [her], she would slit [her daughter's] throat," and that she was "so mad she could kill her daughter." [*Id.* at ¶16.] After that meeting, Mr. Medawar asked the three eye-witnesses to confirm that Ms. Doyle had not been talking about her daughter and that she was not joking at the time. [Dkt. 68-1 at ¶17.] Each confirmed that Ms. Doyle had made the re-

ported statement, that she had not been joking, and that each "felt threatened" by those statements. [*Id.*]

Once the three eye-witnesses reconfirmed what happened, NGS fired Ms. Doyle for violating its anti-violence policy, which says in part: "The Company expects a workplace that is free from acts of violence and threats….Acts or threats of violence will not be tolerated….All threats (even in jest) are considered serious and may result in termination." [Dkt. 68-4 at 13.]

### B. Ms. Doyle's Responses[1]

Ms. Doyle has offered unsworn and unsigned responses to each of NGS' affidavits, in which she attempts to present her version of the facts. Generally speaking, those responses try to prove four points. First, she says that she wasn't having productivity problems. [*See* dkt. 80 at 10.] Second, she says that Mr. Medawar was a terrible boss, who created a negative atmosphere at work, and they never got along. For example, she says that he "acted like a sergeant in the army, he was always harassing people, by walking up behind them, having their screens up on his monitor checking their work activities, getting info from their previous supervisor or manager to use against them. Scott liked being in control over everyone…." [*Id.* at 1-2.] He was always "[w]anting to see my productivity and attendance," and "everyone knows how much Scott dislikes me." [*Id.* at 2.] Third, Ms. Doyle's responses say that she didn't have any scissors in her purse. [Dkt. 83 at 2.] Finally, she claims that her comment that prompted the investigation was

---

[1] Ms. Doyle's "responses" don't qualify as evidence for summary judgment purposes. Her unsworn factual statements aren't admissible; to be considered, her statements needed to be made in an affidavit, subject to the penalties for perjury. *See* Fed. R. Civ. Pro. 56(c); Fed. R. Evid. 603. Furthermore, she didn't sign her unsworn "responses" to NGS' affidavits (though contrary to NGS' suggestion, she did sign her response brief). [*See* dkts. 80 *to* 84.] Because NGS' reply brief complained about her failure to sign those responses, [*see* dkt. 87 at 3], and because Ms. Doyle didn't submit signed responses after NGS' objection, the Court "must" strike them and not consider them. Fed. R. Civ. Pro. 11(a). The statements are all, however, presented for background.

about her daughter and was a figure of speech, taken out of context. According to her, the exact comment was that "my daughter acts like a black Jessica Simpson[;] sometimes I could just slit her damn throat." [Dkt. 79 at 5.] She never intended any violence toward anyone, including her daughter. [Dkt. 80 at 18.]

## II.[2]
### DISCUSSION

Ms. Doyle has sued NGS using several different legal theories. First, she claims that she was wrongfully terminated under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *to* 2000e-17; the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213; the Rehabilitation Act, 29 U.S.C. §§ 701-18; 42 U.S.C. § 1981; and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2611-19. [*See* dkt. 1; dkt. 79.][3] Next, she claims that she faced a hostile work environment under Mr. Medawar, though without specifying the purportedly applicable statute(s). [*See* dkt. 79.] Finally, under state law, she claims that NGS defamed her and intentionally inflicted emotional distress on her. The Court will consider each claim in turn. [*Id.*]

### A. Wrongful Termination

While an employer has the right to fire an employee "for a good reason, bad reason, or no reason at all," *Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006) (quotation omitted), the employer can't fire an employee for an illegal reason. The statutes that Ms. Doyle cited in her

---

[2] Although NGS has argued that the Court should grant its motion for summary judgment because of Ms. Doyle's failure to follow the briefing format required under Local Rule 56.1, that objection is moot. Her claims fail on the merits, as explained below. The Court will only consider Ms. Doyle's surreply to the limited extent appropriate under Local Rule 56.1(d).

[3] It's not clear whether Ms. Doyle claims that she was actually denied FMLA leave. If she is, the Court rejects that claim for two reasons. First, Ms. Doyle admitted in her deposition to receiving FMLA leave. [Dkt. 68-2 at 4.] Second, she didn't develop her claim with any legal argument, and has waived it. *Trentadue v. Redmon*, 619 F.3d 648, 654 (7th Cir. 2010) (stating that "underdeveloped arguments are considered waived" (citation omitted)). Thus the Court will only interpret her claim one for allegedly being discriminated against for using her leave.

Complaint forbid discriminatory firings based upon race, color, sex, national origin, disability, and use of FMLA-leave. Those statutes don't, however, turn this Court into "a 'super personnel department' that second-guesses employers' business judgments….[N]o matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers," *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) (quotations omitted), those statutes don't come into play unless she can show that NGS fired her for a statutorily forbidden reason.

Ms. Doyle can attempt to prove her claim for wrongful termination in two ways: directly or indirectly. She can't use the first way here because she doesn't have any evidence like "we're firing you because you are a woman [or African-American or disabled or because you used FMLA leave]." *See Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999) (explaining what "direct" evidence of discrimination means). The second way won't work here either. Among many other reasons, Ms. Doyle can't show that NGS' stated reason for firing her is a "lie" to hide its discrimination. *McGowan v. Deere & Co.*, 581 F.3d 575, 579 (7th Cir. 2009) (arising in the context of sex discrimination). Whether or not Ms. Doyle had only used a figure of speech and whether or not she had used it only about her daughter, Ms. Doyle has no evidence that NGS is lying when it says that it actually believed (based on three employees' statements) that she had threatened workplace violence and fired her for that reason.

Although Ms. Doyle claims that the anti-violence policy that NGS used to justify firing her "wasn't uniformly enforced," [dkt. 79 at 15], she has no evidence that NGS enforced it against her for a statutorily forbidden reason. NGS is entitled to summary judgment in that regard.

### B. Hostile Work Environment

Harassment can be a form of workplace discrimination, if severe enough. *See Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) ("The workplace that is actionable is one that is hellish." (quotation omitted)). Federal law, therefore, also forbids employers from creating a hostile work environment targeted toward an employee's statutorily protected characteristics.[4]

NGS is entitled to summary judgment on Ms. Doyle's hostile work environment claims. Ms. Doyle appears to argue that her (inadmissible) submissions show that she worked for a boss who was micro-managing and unpleasant and who was always on the lookout for ways to "get" his employees, and that various co-workers helped him in his harassment of her. But those facts, even if true, don't establish a hostile work environment that violates federal employment law; any harassment was not directed toward her because of any statutorily protected characteristic(s) that she has. *See Rhodes v. Ill. DOT*, 359 F.3d 498, 505 (7th Cir. 2004) (listing as a requirement for a sexually hostile work environment that the conduct was directed at the plaintiff because of the plaintiff's sex).

### C. Defamation[5]

Indiana defamation law permits a plaintiff to sue a defendant who wrongly tells falsehoods to others that damage the plaintiff's reputation. *See, e.g.*, *Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007) (collecting cases establishing specific elements of cause of action). Various defenses to a defamation action exist, including that the defendant made the statements under the qualified privilege of common interest. *E.g.*, *Schrader v. Eli Lilly & Co.*, 639 N.E.2d 258, 262

---

[4] The Court notes that the Seventh Circuit hasn't yet decided whether a hostile work environment violates the Americans with Disabilities Act. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 603 (7th Cir. 2009) (noting the open question).

[5] Because the fate of Ms. Doyle's state-law claims is abundantly clear, the Court will address them even though all federal claims have been resolved. *Van Harken v. City of Chicago*, 103 F.3d 1346, 1354 (7th Cir. 1997) (collecting cases).

(Ind. 1994). That qualified privilege permits communications within a company "regarding the fitness of an employee" so as to promote "legitimate human resource management needs." *Id.* (citation omitted). It requires "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner to the appropriate parties only." *Id.*

To overcome any qualified privilege, the plaintiff must also prove "(1) the communicator was primarily motivated by ill will in making the statement; (2) there was excessive publication of the defamatory statements; or (3) the statement was made without belief or grounds for belief in its truth." *Id.* (quotation omitted).

Here, Ms. Doyle claims that she was defamed when, in her view, her co-workers misrepresented what she had said about her daughter. [*See* dkt. 79 at 18.] But the Court agrees with NGS that the common-interest privilege protects the statements they made to NGS management during the course of its investigation into Ms. Doyle. The only admissible evidence in the record shows that her co-workers felt threatened by her statements (as they understood them). They reported them in good faith to management, which appropriately investigated them to determine Ms. Doyle's continued "fitness" as an employee. Thus, NGS has shown that the statements were protected by the qualified common-interest privilege. Because Ms. Doyle has no evidence to defeat that privilege, NGS is entitled to summary judgment on her claim for defamation.

**D. Intentional Infliction of Emotional Distress**

Finally, Ms. Doyle appears to claim that Mr. Medawar's firing of her amounted to intentional infliction of emotional distress. [*See* dkt. 79 at 20.] Among other things, this cause of action requires Ms. Doyle to prove that Mr. Medawar engaged in conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Lindsay v. DeGroote*, 898 N.E.2d 1524, 1264 (Ind. Ct. App. 2009) (quotation omitted). While Ms. Doyle argues that her firing meets that high standard, the Court disagrees. Whether or not NGS didn't uniformly apply its anti-violence policy, applying it to her—after three other employees reported that they felt threatened—doesn't amount to conduct that is "utterly intolerable in a civilized community."

### III.
#### CONCLUSION

The Court **GRANTS** NGS' motion for summary judgment. [Dkt. 66.] Final judgment will now issue in NGS' favor for all claims in this action.

12/13/2010

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via U.S. Mail:**

KIM A. DOYLE
2268 West 10th Avenue
Gary, IN 46404

**Distribution via ECF only:**

Sylvia Abra Bier
LITTLER MENDELSON, P.C.
sbier@littler.com

Alan L. McLaughlin
LITTLER MENDELSON PC
amclaughlin@littler.com